_____



SO ORDERED,

*[signature: Edward Ellington]*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: October 30, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 13** |
| **STEPHEN L. MASON, SR.** | **CASE NO. 1004195EE** |

| | |
|---|---|
| Hon. Richard R. Grindstaff | Attorney for Debtor |
| grindstaf@yahoo.com | |
| Post Office Box 720517 | |
| Byram, MS 39272 | |

| | |
|---|---|
| Hon. Kent D. McPhail | Attorney for Christiana Trust |
| kent@dumasmcphail.com | |
| Post Office Box 870 | |
| Mobile, AL 36601 | |

| | |
|---|---|
| Hon. James L. Henley, Jr. | Chapter 13 Trustee |
| Hon. Catoria Martin | Attorney for Chapter 13 Trustee |
| Post Office Box 31980 | |
| Jackson, MS  39286 | |

Edward Ellington, Judge

## MEMORANDUM OPINION

**THIS MATTER** came before the Court on the *Trustee's Motion for an Order Declaring*

*Carrington Mortgage Services 1322(B)(5) Claim Defaults Cured Pursuant to the Amended Proof*

*of Claim Filed on January 11, 2011* (Dkt. #29) and the *Notice of Final Cure Payment* (Dkt. #31) filed by the Chapter 13 Trustee, James L. Henley, Jr.; the *Response to Trustee's Motion to Deem Section 1322(b)(5) Claim Current and Defaults Cured, Doc No. 29* (Dkt. #33) filed by Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8, c/o Carrington Mortgage Services, LLC.; the *Objection to Proof of Claim* (Dkt. #44) filed by Stephen L. Mason, Sr.; the *Response to Debtor's Objection to Proof of Claim, Doc No. 44* (Dkt. #45) and the *Amended Response to Debtor's Objection to Claim, Doc. No. 45* (Dkt. #66) filed by Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8, c/o Carrington Mortgage Services, LLC.; the *Amended Objection to Proof of Claim* (Dkt. #55) filed by Stephen L. Mason, Sr.; and the *Second Amended Response to Debtor's Objection to Claim, Doc. No. 45*[1](Dkt. #67) filed by Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8, c/o Carrington Mortgage Services, LLC.

After considering same and the *Joint Stipulation of Undisputed Facts* (Dkt. #68), the Court finds that the *Objection to Proof of Claim* (Dkt. #44) and the *Amended Objection to Proof of Claim* (Dkt. #55) both filed by Stephen L. Mason, Sr. are well taken and should be granted. Therefore, the *Trustee's Motion for an Order Declaring Carrington Mortgage Services 1322(B)(5) Claim Defaults Cured Pursuant to the Amended Proof of Claim Filed on January 11, 2011* (Dkt. #29) filed by James L. Henley, Jr., Chapter 13 Trustee, is well taken and should be granted.

---

[1]The pleading states that it is a response to the Debtor's original objection (Dkt. #45), however upon reading the response, it appears that it is actually a response to the Debtor's amended objection (Dkt. #55).

2

## FINDINGS OF FACT[2]

On August 22, 2002, Stephen L. Mason, Sr. and Kimiko Mason entered into a *Disclosure Statement, Note and Security Agreement* and a *Deed of Trust* with Travelers Bank & Trust, FSB. The original amount financed was $98,425.17, and is secured by real property owned by the Masons.

On November 29, 2010, Stephen L. Mason, Sr. (Debtor) filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. James L. Henley, Jr. (Trustee) was appointed as the Chapter 13 Trustee for the Debtor's bankruptcy case.

The Debtor filed his *Chapter 13 Plan* (Dkt. #2) (Plan) on November 29, 2010. The Debtor filed an *Amended Chapter 13 Plan* (Dkt. #13) (Amended Plan) on December 10, 2010.[3] In his Plan and Amended Plan, the Debtor proposed to pay the ongoing mortgage payment to CitiMortgage, Inc.[4] (CitiMortgage) through his plan and to pay an arrearage on his mortgage to CitiMortgage in the amount of $12,000.00.

The *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines* (Dkt. #9) (341 Notice) was filed on December 2, 2010, and on December 5, 2010, the 341 Notice was mailed to all creditors. CitiMortgage is listed on the certificate of service (Dkt. #10), and CitiMortgage

---

[2] These proposed findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[3] The Amended Plan corrected a typographical error contained in the Plan. The Plan proposed the plan period to be thirteen (13) months. The Amended Plan corrected this error and proposed the plan period to be a maximum of sixty (60) months.

[4] At some point, Travelers Bank & Trust, FSB, became Citicorp Trust Bank, FSB. Citicorp Trust Bank, FSB entered into a *Master Inter-Affilate Services Agreement* whereby CitiMortgage, Inc. became the service provider. *Proof of Claim* 1-2, Case No. 1004195EE, Jan. 11, 2011.

3

does not dispute that it received the 341 Notice. The 341 Notice states that the deadline for the filing of proofs of claim was March 28, 2011.

CitiMortgage timely filed a *Proof of Claim* (Claim #1-1) (First Proof of Claim) on December 28, 2010. In Box 1, CitiMortgage lists the amount of its claim as of the date the case was filed as $62,776.41. In Box 4, CitiMortgage lists the arrearage owed on its mortgage as $439.21.

On January 11, 2011, CitiMortgage timely filed an amended *Proof of Claim* (Claim #1-2) (Amended Proof of Claim). In Box 1 of the Amended Proof of Claim, CitiMortgage lists the amount of its claim as of the date the case was filed as $62,706.22, slightly less than the figure contained on its First Proof of Claim. In Box 4 of the Amended Proof of Claim, CitiMortgage lists the arrearage owed on its mortgage as $439.21, the same figure contained in its First Proof of Claim.

The *Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders* (Dkt. #15) (Confirmation Order) was entered on January 24, 2011. The Confirmation Order approved the Debtor's Amended Plan for a period not to exceed sixty (60) months. In the Confirmation Order, the amount of the Debtor's mortgage payment and the amount of the mortgage arrearage was changed to conform with CitiMortgage's Amended Proof of Claim. Therefore, in the Confirmation Order the amount of the mortgage arrearage to be paid to CitiMortgage was reduced from $12,000.00 to $439.21. Pursuant to the Confirmation Order, the Debtor proposed to pay 100% to his unsecured creditors who timely filed proofs of claim.

On March 28, 2013, and on May 29, 2013, CitiMortgage filed its *Notice of Mortgage Payment Change* (See *doc* entries on the Claims Registry.). The March 28th notice informed the Debtor that on May 1, 2013, the Debtor's escrow payment would increase from $221.23 to $233.68. Therefore, beginning May 1, 2013, the Debtor's total mortgage payment would be $1,392.17.

4

The May 29th notice informed the Debtor that on July 1, 2013, the Debtor's escrow payment would decrease from $221.18 to $210.90.[5] Therefore, beginning July 1, 2013, the Debtor's total mortgage payment would be $1,369.39.

On October 7, 2013, a *Transfer of Claim Other Than for Security* (Dkt. #25) was filed. The transfer states that CitiMortgage transferred its claim to Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8. The transfer further states that all notices should be sent care of Carrington Mortgage Services, LLC. For purposes of this Opinion, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8 will be referred to as Carrington Mortgage.

The Debtor made his last payment to the Trustee on February 20, 2014. From the date the Confirmation Order was entered, the Debtor paid into his Chapter 13 plan for a total of thirty-eight (38) months. Even though the Debtor's plan was confirmed for a period not to exceed sixty (60) months, the Debtor had paid his unsecured creditors in full and had paid his arrearage on his mortgage in full over the thirty-eight (38) months. Therefore, the Debtor had completed his plan payments as required by the Confirmation Order.

Since the Debtor had completed all of his plan payments, on March 5, 2014, the Trustee filed a *Notice of Final Cure Payment* (Dkt. #31) (Final Cure) in accordance with Federal Rule of

---

[5]Since the March 28th notice had increased the escrow payment to $233.68 effective May 1, 2013, the Court is unsure why the May 29th notice states that the Debtor's current escrow payment was $222.18.

5

Bankruptcy Procedure 3002.1(f).[6]  The Final Cure notified Carrington Mortgage that the Trustee had paid to Carrington Mortgage the pre-petition arrearage of $439.21, the amount Carrington Mortgage had listed in its Amended Proof of Claim.

Pursuant to Rule 3002.1(h), the Trustee also filed on March 5, 2014, *Trustee's Motion for an Order Declaring Carrington Mortgage Services 1322(B)(5) Claim Defaults Cured Pursuant to the Amended Proof of Claim Filed on January 11, 2011* (Dkt. #29) (Motion).  In the Motion, the Trustee notifies Carrington Mortgage that the Debtor had paid all mortgage payments from December 2010 through February 2014 and that the Debtor had paid the arrearage owed on his mortgage to Carrington Mortgage.  The Motion states that "[a]ll payments required by the Trustee via the Amended Proof of Claim have been paid in full,"[7] and that therefore, the Debtor should be deemed current to Carrington Mortgage in all payments (arrearage claim and monthly mortgage payments) through February 2014.

Pursuant to Rule 3002.1(g), once the Trustee filed the Final Cure, Carrington Mortgage had twenty-one (21) days to filed a response.  Specifically, Rule 3002.1(g) states:

> Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

---

[6] Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[7] *Trustee's Motion for an Order Declaring Carrington Mortgage Services 1322(B)(5) Claim Defaults Cured Pursuant to the Amended Proof of Claim Filed on January 11, 2011,* Dkt. #29, Case No. 1004195EE, ¶5, March 5, 2014.

6

Fed. R. Bankr. P. 3002.1(g).

On March 25, 2014, Carrington Mortgage filed its *Response to Trustee's Motion to Deem Section 1322(b)(5) Claim Current and Defaults Cured, Doc No. 29* (Dkt. #33) (Response) and filed on the Claims Registry its *Supplemental Statement to Claim in Response to Notice of Final Cure Payment, Doc No. 31* (Statement).  In its Response and Statement, Carrington Mortgage simply requests that the Motion and its Response be set for hearing.

On May 23, 2014, Carrington Mortgage filed an amended *Proof of Claim* (Claim 1-3) (Second Amended Proof of Claim).  In its Second Amended Proof of Claim, in Box 1, Carrington Mortgage lists the amount of its claim as of the date the case was filed as $62,776.52, the same amount listed in the First Proof of Claim.  In Box 4 of the Second Amended Proof of Claim, Carrington Mortgage states that the pre-petition mortgage arrearage to be $12,608.52.

The Debtor filed his *Objection to Proof of Claim* (Dkt. #44) (Objection) on June 10, 2014. The Debtor states that the Second Amended Proof of Claim was filed well beyond the deadline for filing proofs of claim and that it drastically differs from the previously filed proofs of claim.

Carrington Mortgage filed its *Response to Debtor's Objection to Proof of Claim, Doc No. 44* (Dkt. #45) on June 10, 2014, in which Carrington Mortgage simply requests that the Court set the matter for hearing.  On September 10, 2014, Carrington Mortgage filed its *Amended Response to Debtor's Objection to Claim, Doc. No. 45* (Dkt. #66) (Amended Response).  In its Amended Response, Carrington Mortgage states that the initial claim should have "included arrearage in the amount of $12,608.52."[8]  Carrington Mortgage further states that the Second Amended Proof of

---

[8]*Amended Response to Debtor's Objection to Claim, Doc. No. 45,* Dkt. #66, Case No. 1004195EE, ¶ 3, September 10, 2014.

7

Claim corrects the error of the First Proof of Claim and that the Debtor "is not prejudiced by the amendment of the claim, particularly in light of the fact that Debtor was aware of the arrearage and should not benefit from the mistake of creditor which he knew, or should have known was an error."[9]

On July 29, 2014, the Debtor filed his *Amended Objection to Proof of Claim* (Dkt. #55) (Amended Objection). In his Amended Objection, the Debtor recites the facts regarding the filing of the case and the various proofs of claim and the pleadings. In addition, the Debtor cites to authority he claims supports his position that the Second Amended Proof of Claim was untimely and should be disallowed. Carrington Mortgage filed a pleading styled *Second Amended Response to Debtor's Objection to Claim, Doc. No. 45* (Dkt. #67) (Second Amended Response). However, as stated previously, upon reading the Second Amended Response, it is clear that it is actually a response to the Debtor's Amended Objection. In its Second Amended Response, Carrington Mortgage addresses the authority cited by the Debtor and asserts that the Court should deny the Debtor's objections to its Second Amended Proof of Claim.

In the meantime, Carrington Mortgage filed a *Transfer of Claim Other Than for Security* (Dkt. #56). The transfer states that Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8 (Carrington Mortgage) transferred its claim to Rushmore Loan Management Services LLC as servicing agent for Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8. The transfer further states that all notices should be sent to Rushmore Loan Management Services. For clarity, and because Carrington Mortgage was the mortgage

---

[9]*Id.* at ¶10.

holder/servicer at the time all of the pleadings were filed, this Opinion will refer to the mortgage holder/servicer as Carrington Mortgage.

On September 17, 2014, the parties submitted a *Joint Stipulation of Undisputed Facts* (Dkt. #68) (Stipulation) in which the parties basically stipulated to the facts above.[10] The parties stipulated that there were no facts in dispute and that the Court could rule on the matter based upon the pleadings filed. The Court then took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B).

### II.

The Court will note at the onset that neither party provided the Court with much legal authority to support their respective positions. In his Amended Objection, the Debtor cites *In re DePugh,* 409 B.R. 84 (Bankr. S.D. Tex. 2009) and *In re Durango Georgia Paper Co.,* 314 B.R. 885 (Bankr. S.D. Ga. 2004) in support of his position that the Second Amended Proof of Claim was untimely filed and should be denied. Carrington Mortgage addresses *Durango* in its Second Amended Response and argues that it does not apply to the case at bar, but Carrington Mortgage does not on its own cite to any authority to support its position that the Second Amended Proof of Claim should be allowed.

---

[10]The Stipulation the parties submitted is a very bare-boned stipulation. The Court's listing of the facts expands on the parties basic Stipulation.

9

## Proofs of Claim

In a Chapter 13, a trustee distributes money to creditors in accordance with the debtor's confirmed Chapter 13 plan. In order for a creditor to receive distributions under a Chapter 13 plan, a creditor "must also file a proof of claim. *See In re Hogan,* 346 B.R. 715 (Bankr. N.D. Tex.2006); *In re Marcias,* 195 B.R. 659, 660–61 (Bankr. W.D. Tex.1996) (concluding that Federal Rule of Bankruptcy Procedure 3021 'appears to mandate that the creditor may receive distributions out of the plan only if it holds an allowed claim')." *In re Quintana*, 05-42417-DML-13, 2006 WL 2620505 (Bankr. N.D. Tex. Sept. 12, 2006) *subsequently aff'd,* 247 F. App'x 564 (5th Cir. 2007).

Rule 3001 provides the procedure for the filing of a proof of claim. Rule 3001 provides in pertinent part:

> **Rule 3001. Proof of Claim.**
>
> **(a) Form and content.** A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.
>
> **(b) Who May Execute.** A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.
>
> . . . .
>
> **(f) Evidentiary Effect.** A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed. R. Bankr. P. 3001.

The deadline for the filing of a proof of claim is found in Rule 3002. Rule 3002 provides in pertinent part:

10

**Rule 3002. Filing Proof of Claim or Interest.**

. . . .

**(c) Time for Filing**. In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code. . . .

Fed. R. Bankr. P. 3002.

There is no dispute that the First Proof of Claim and the Amended Proof of Claim complied with Rule 3001. In addition, there is no dispute that Carrington Mortgage timely filed is First Proof of Claim and its Amended Proof of Claim pursuant to Rule 3002. Rather, the dispute involves the Second Amended Proof of Claim. The Debtor contends that the Second Amended Proof of Claim, which was filed approximately thirty-eight (38) months after the claims bar date had passed, should not be allowed.

The Court of Appeals for the Fifth Circuit addressed a situation analogous to the case at bar in *United States v. Kolstad (In re Kolstad),* 928 F.2d 171 (5th Cir. 1991). In *Kolstad*, a Chapter 11 case, the Internal Revenue Service (IRS) did not file a proof of claim before the bar date ran. After the bar date had passed, the debtor filed a proof of claim in the amount of $20,359.71 on behalf of the IRS. Approximately ten (10) months later, the IRS filed an "amended" proof of claim in the amount of $85,882.67. The debtor objected to the proof of claim filed by the IRS and argued that because the bar date had passed, the IRS lost the right to file a proof of claim for a higher amount.

The Fifth Circuit disagreed with the debtor's position. In addressing the purpose of bar dates in bankruptcy, the Fifth Circuit found:

> The deadlines have a purpose: they enable a debtor and his creditors to know, reasonably promptly, what parties are making claims against the estate and in what general amounts. The claims filing deadlines, however, by no means fix in stone the

11

> final "allowed" amounts of claims. The proof of claim is prima facie evidence of the amount and origin of the debt owed, Bankruptcy Rule 3001(f), but any party in interest may object to a proof of claim. 11 U.S.C. § 502(a); Bankruptcy Rules 3007 (objections); 3008 (reconsideration of claims). There is no bar date or deadline for filing objections. Once an objection is filed, the final amount of the claim is determined by litigation in an adversary proceeding. *See* Bankruptcy Rules 7001 *et seq.*[11] Such litigation may end in a settlement agreement providing for a compromise claim that, although it represents a bargained rather than actual amount of the debt owed, may pass muster with the creditors who have to approve it. Thus, while bar dates establish the universe of participants in the debtor's case, they have little correlation to the final relative amounts in which creditors will share any distribution. The goal of claims adjudication, on the other hand, is to assure that each creditor *which is part of that universe* ultimately participates in the voting and distribution from the estate in the proper amount determined by the priority and nature of its claim and bankruptcy's bargaining process.

*In re Kolstad*, 928 F.2d at 173-74 (footnotes omitted).

In the case at bar, there is no dispute that the First Proof of Claim and the Amended Proof of Claim were both timely filed and that the Debtor did not object to either proof of claim. Consequently, the Amended Proof of Claim was "deemed allowed" under 11 U.S.C. § 502(a).

The issue then turns to whether Carrington Mortgage may amend its Amended Proof of Claim. The Fifth Circuit went further in *Kolstad* and discussed the issue of when amendments to timely filed proofs of claim should be permitted:

> Consistent with our view of the comparative roles of bar dates and claims adjudication is the allowance of amended proofs of claim. Amendments to timely creditor proofs of claim have been liberally permitted to "cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re International Horizons, Inc.,* 751 F.2d at 1216. Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability. *Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir.1980).

---

[11] The *Kolstad* opinion was issued in 1991. Under the current version of Rule 7001, an objection to a proof of claim does not initiate an adversary proceeding.

*In re Kolstad*, 928 F.2d at 175.

In order to determine whether an amendment to a proof of claim is not setting forth totally new grounds of liability, the Fifth Circuit established a test for determining whether to permit an amendment to a proof of claim to be filed: (1) is the creditor "attempting to stray beyond the perimeters of the original proof of claim and effectively file a 'new' claim that could not have been foreseen from the earlier claim"[12] and (2) "the degree and incidence of prejudice, if any, caused by the [creditor's] delay."[13]

The Court does not find that Carrington Mortgage is "attempting to stray beyond the perimeters"[14] of its Amended Proof of Claim and file a new claim. Therefore, the issue turns on whether the Debtor and his creditors will be unduly prejudiced if the Second Amended Proof of Claim is allowed.

### Prejudice to the Debtor and/or Creditors.

In *In re Taylor*, 280 B.R. 711, (Bankr. S.D. Ala. 2001), Judge Margaret A. Mahoney was faced with a factual situation almost identical to the facts of the case before the Court. At the time the case was filed (1996), the debtors filed a Chapter 13 plan in which the debtors proposed to pay all of their unsecured creditors 100%. Prior to confirmation of their plan, their mortgage holder, Fleet Finance (Fleet), timely filed a proof of claim in the amount of $36,162.77 and listed it as an unsecured, nonpriority claim. On July 2, 1996, the debtors' plan was confirmed without an objection by Fleet.

---

[12]*In re Kolstad*, 928 F.2d at 175, n. 7.

[13]*Id.*

[14]*Id.*

13

On January 5, 2001, Empire (a successor to Fleet) filed a proof of claim. The Empire proof of claim was filed in the amount of $18,000.04 which Empire claims was secured by the debtors' real property. The debtors objected to the Empire claim. The debtors had (or would shortly) complete their plan payments and pay the original unsecured claim of Fleet, namely $36,162.77, in full. The debtors argued that they would be unfairly prejudiced if the Empire proof of claim was allowed at such a late date in their bankruptcy case.

First, Empire argued that the debtors' plan should not have been confirmed because it violated § 1322(c)(2). Judge Mahoney disagreed and found that:

> [The plan did] not violate Section 1322 or any other section of the Bankruptcy Code. What Empire was paid depended solely upon Empire. It needed to file a claim which would indicate its status and the amount of its claim. It did file a claim. It stated that it was an unsecured creditor with a claim of $36,162.77. . . .Based on that claim, the trustee paid the claim correctly. . . .The debtors paid the amount they were required to pay.

*Taylor,* 280 B.R. at 714.

Second, Judge Mahoney found that "the order of confirmation is binding on Empire regardless of the propriety of its treatment. 11 U.S.C. § 1327. Collier on Bankruptcy ¶ 1327.02[1][c] (15th Ed. 1999.)." *Id.*

After addressing § 1322, Judge Mahoney next turned to the issue of whether Empire's claim was a new claim and should be allowed. The court found that if Empire was offering the claim as a new claim, it should not be allowed because it was filed over four years after the claims bar date.

In the alternative, if Empire was attempting to treat its claim as an amendment to the claim filed by Fleet, Judge Mahoney found that the amendment would not be allowed because its claim was an entirely new one. Further, the court found that

> the amendment, if allowed would obviously be very prejudicial to the debtors. They are within three months of completing their plan and discharging Empire's debt.

> They paid the debt as requested by Empire. The fault for the problem lies squarely with Empire. . . .If Empire chose to file an unsecured claim, that is its right. Its delay in filing a new claim until now is sufficient to preclude relief. The debtors should not suffer because this loan has changed hands at least three times and Empire did not know what the initial proof of claim stated.

*Id.* at 716.[15]

The same result was reached in the very recent case of *In re Martinez,* 513 B.R. 779 (Bankr. D. Puerto Rico 2014). In *Martinez*, after the debtors had completed their plan payments the creditor filed an amended proof of claim to correct a "clerical error"[16] it had made in its timely filed proof of claim. The original proof of claim had crossed-up the secured and unsecured amounts of its debt.

After reviewing how distributions are made in a Chapter 13 plan, the court found that the creditor's initial proof of claim was deemed allowed and that the trustee correctly made distributions pursuant to the creditor's proof of claim. The court then turned to the amended proof of claim. Citing the test established by the Fifth Circuit in *Kolstad*, the court first found that the amended proof of claim was not a new claim, but rather, simply an attempt to correct the secured and unsecured sections of its original proof of claim. The court did not allow the amended proof of claim and found that the creditor's mistake in its original proof of claim could only be attributable to its error. If the court allowed the creditor to amend its proof of claim after receiving payments according to the confirmed plan for five years, it would "cause undue prejudice to the Debtors and other creditors." *In re Martinez,* 513 B.R. at 788.

In the case at bar, Carrington Mortgage timely filed its First Proof of Claim and its Amended

---

[15]It should be noted that not only did Judge Mahoney deny Empire's amended claim, but she also went further and ordered that upon completion of their plan payments, Empire's lien on the debtors' real property would be released.

[16]*In re Martinez,* 513 B.R. at 781.

15

Proof of Claim. Therefore, the Debtor's plan was amended to reflect the amount Carrington Mortgage stated in its proof of claim that it was owed. While the Debtor did not pay into his plan for the entire 60 months as his Confirmation Order proposed, the Debtor paid the Trustee for a total of thirty-eight (38) months.[17] Over this thirty-eight (38) month period, the Debtor paid all of his unsecured debt and the arrearage on his mortgage. It was not until some three months after the Debtor completed his plan payments that Carrington Mortgage filed its Second Amended Proof of Claim in which it alleges that the Debtor owed it an additional $12,608.52.

Based on the holdings in *Kolstad, Taylor* and *Martinez,* the Court finds that allowing Carrington Mortgage to amend its proof of claim, in such a large dollar amount, after the Debtor had completed all of his plan payments would be unfairly prejudicial to the Debtor. The Debtor paid Carrington Mortgage's claim exactly as Carrington Mortgage requested. Now that the Debtor has completed his plan payments, the fact that Carrington Mortgage now claims that it is owed an additional $12,608.52, "lies squarely with [Carrington Mortgage]."[18]

In its Amended Response, Carrington Mortgage claims that the Debtor is not prejudiced by the late filed claim because the Debtor's plan was confirmed for a period of sixty (60) months. According to Carrington Mortgage, the Debtor is

> seeking to be discharged 20 months early from his Bankruptcy plan due to the error in the initial claim. The borrower knew he would be in a plan for 60 months. The Debtor knew the actual arrearage owed and made provision for it in his initial plan. The Debtor knew or should have known that the initial claim was filed in error. From an equity standpoint, the amended claim should be allowed and the Debtor

---

[17] The Debtor paid his first payment to the Trustee on December 28, 2010. The Debtor made his last payment to the Trustee on February 20, 2014.

[18] *Taylor,* 280 B.R. at 716.

16

should pay the balance that he knew existed.[19]

Carrington Mortgage is misguided in its belief that the Debtor must stay in the plan for the entire sixty (60) months as proposed. Section 1325(b)(4)(B) provides that "[f]or purposes of this subsection, the 'applicable commitment period'– (B) may be less than 3 or 5 years, . . . , but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period."[20]

In other words, when a debtor has paid all of his/her unsecured creditors in full, that becomes the *applicable commitment period* under § 1325(b)(4)(B). "In sum, we hold that a plain reading of the Bankruptcy Code, and Section 1325 in particular, mandates that an above-median-income debtor maintain a bankruptcy plan for five years unless all unsecured creditor claims are paid in full and irrespective of projected disposable income." *Pliler v. Stearns*, 747 F.3d 260, 266 (4th Cir. 2014). *See also In re Tennyson*, 611 F.3d 873, 880 (11th Cir. 2010)("The only exception to this minimum period, if unsecured claims are fully repaid, is provided in § 1325(b)(4)(B)."); *In re Flores*, 735 F.3d 855, 858 (9th Cir. 2013)("[T]he statute defines the applicable commitment period as having a duration: '3 years,' 'not less than 5 years,' or 'less than 3 or 5 years,' depending on the debtor's current monthly income and the plan's provisions for payments to unsecured creditors. 11 U.S.C. § 1325(b)(4).").

In the case at bar, the Debtor proposed to pay his unsecured creditors in full or 100%. The Debtor did exactly as he proposed and paid his unsecured creditors in full over thirty-eight (38) months. Pursuant to § 1325(b)(4)(B), the Debtor is entitled to exit his bankruptcy case in less than the sixty (60) months proposed in his plan.

---

[19]*Second Amended Response to Debtor's Objection to Claim, Doc. No. 45,* Dkt. #67, Case No. 1004195EE, ¶ 17, September 10, 2014.

[20]11 U.S.C. § 1325(b)(4)(B).

17

**Effect of *Espinosa*, if any.**

In *Colonial Mortgage & Loan Corp. v. Ellzey,* 445 B.R. 674 (E.D. La. 2011) the debtor filed a plan in which he listed the debt to his mortgage holder, Colonial, as $15,000.00. Colonial filed a proof of claim for $9,634.02.

The debtor completed all plan payments. Colonial was paid the full amount of the claim it filed, namely $9,634.02, and the debtor received his discharge. Post-discharge, Colonial sought an additional $4,659.41 in pre-petition debt and $6,198.58 in post-petition expenses from the debtor. Before the district court, Colonial asserted that "the Chapter 13 Plan should dictate the amount owed to Colonial and not the Proof of Claim, based on a recent Supreme Court decision [*United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367, 176 L. Ed.2d 158 (2010)]."[21]

In rejecting Colonial's *Espinosa* argument, the district court found that *Espinosa* was distinguishable from the facts of the case before it. The court found:

> Colonial attempts to argue that it is entitled to recover under the order confirming the Chapter 13 Plan because it is considered "final" based on the holding in *Espinosa.* However, unlike the creditor in *Espinosa,* Colonial failed to file a Proof of Claim which comported with the amount filed under the Chapter 13 Plan. The Fifth Circuit has held that Chapter 13 Plans on their face give a binding effect to all creditors pursuant to § 1327(a) of the Bankruptcy Code. However, "[Provisions *[sic]* of the bankruptcy code cannot be read in isolation but should be interpreted in light of the remainder of the statutory scheme.]" Section 506(a) provides that the value of a claim must be determined in conjunction with any plan that would affect the creditor's interest. The Fifth Circuit held in *In re Simmons* that a Chapter 13 plan "may not substitute for an objection to a secured creditor's proof of claim." (*In re Simmons*, 765 F.2d 547 (5th Cir.1985).) Therefore, the Proof of Claim provides prima facie evidence of the validity and the amount of the claim. B.R. § *(sic)* 3001. To rebut the proof of claim the *debtor* must file an objection under B.R. § *(sic)* 3007. If no objection is filed, the Proof of Claim is deemed allowed under the Chapter 13 Plan. (*Matter of Howard*, 972 F.2d 639 (5th Cir.1992)). Therefore, when a mortgage lender files a lesser amount than is included in the Chapter 13 plan the Trustee will adjust the amount to be paid to the creditor to match the Proof of Claim.

---

[21]*Colonial Mortgage*, 445 B.R. at 675.

*Colonial Mortgage*, 445 B.R. at 677.

Likewise, in the case at bar, the Court finds that *Espinosa* does not apply. The Debtor's plan provided for a mortgage arrearage of $12,000.00 to be paid to Carrington Mortgage. However, Carrington Mortgage filed its First Proof of Claim and its Amended Proof of Claim in which it states that the arrearage owed to it was only $439.21. Neither the Debtor nor the Trustee filed an objection to either proof of claim, and the proof of claim with a mortgage arrearage of $439.21 was deemed allowed. As stated by the *Colonial Mortgage* court, "when a mortgage lender files a lesser amount than is included in the Chapter 13 plan the Trustee will adjust the amount to be paid to the creditor to match the Proof of Claim." *Id.*

That is exactly what happened in the case at bar: Carrington Mortgage filed its Amended Proof of Claim for an amount less than what was proposed in the Chapter 13 plan. The Debtors paid exactly what Carrington Mortgage requested the Debtor to pay as an arrearage on his mortgage. Neither the Trustee nor the Debtor had a responsibility to tell Carrington Mortgage how to complete its proof of claim. Carrington Mortgage waited until the Debtor had completed all of his plan payments before it filed its Second Amended Proof of Claim. As in *Taylor,* the Debtor "should not suffer because this loan has changed hands at least [two] times and [Carrington Mortgage] did not know what the initial proof of claim stated." *In re Taylor,* 280 B.R. at 716.

## CONCLUSION

In order to receive distributions under a confirmed Chapter 13 plan, a creditor must file a proof of claim. Without objection by a party, the proof of claim is deemed allowed and "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bank. P. 3001(f).

Carrington Mortgage filed its proof of claim, and it was deemed allowed. Consequently, the

19

Trustee paid Carrington Mortgage exactly what it requested in its Amended Proof of Claim, namely $439.21. After the Debtor had paid according to his Confirmation Order for 38 months and completed all plan payments, it would cause undue prejudice to the Debtor to allow Carrington Mortgage to three (3) months later file an amended proof of claim in which it claims it is actually owed a mortgage arrearage in the amount of $12,608.52.

As aptly stated by the Court of Appeals for the First Circuit in *Candelario del Moral v. UBS Fin. Servs. (In re Efron)*, 746 F.3d 30 (1st Cir. 2014):

> For over four centuries, persons learned in the law have known that, when litigation is in prospect, vigilance is good and somnolence is bad. Commentators and courts have phrased this sentiment in different ways. *See, e.g., In re Wood,* [1883] 23 Ch.D. 644 at 653 (Eng.) ("It is a reasonable presumption that a man who sleeps upon his rights has not got much right."); Edmund Wingate, *Maxims of Reason* (1658) ("Laws come to the assistance of the vigilant, not of the sleepy."). The lesson to be derived is that "[t]he law ministers to the vigilant not to those who sleep upon perceptible rights." *Puleio v. Vose,* 830 F.2d 1197, 1203 (1st Cir.1987).

*In re Efron*, 746 F.3d at 32.

Consequently, the Court finds that *Objection to Proof of Claim* (Dkt. #44) filed by Stephen L. Mason, Sr. and the *Amended Objection to Proof of Claim* (Dkt. #55) filed by Stephen L. Mason, Sr. are well taken and should be granted. Therefore, the *Trustee's Motion for an Order Declaring Carrington Mortgage Services 1322(B)(5) Claim Defaults Cured Pursuant to the Amended Proof of Claim Filed on January 11, 2011* (Dkt. #29) is well taken and should be granted.

A separate judgment consistent with this Opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##